IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS ODELL KELLY
a/k/a THOMAS ODELL
KELLEY,[1]

                    Petitioner,

          v.                              CASE NO.  11-3233-SAC

DAVID McKUNE,
et al.,

                    Respondents.

<u>MEMORANDUM AND ORDER</u>

     This petition for writ of habeas corpus was filed pursuant to
28 U.S.C. § 2254 by an inmate of the Lansing Correctional Facility,
Lansing, Kansas.  Petitioner has filed a motion to proceed in forma
pauperis with financial information attached indicating that the
motion could be granted.  However, he has also paid the fee, which
renders the motion moot.

     Mr. Kelly seeks to challenge his conviction for aggravated
sodomy entered upon his plea of nolo contendere in Case No. 90-CR-
671 in Shawnee County District Court.  He was sentenced to 15 years
to life for this conviction on June 21, 1991.


<u>SCREENING</u>

     Having reviewed all materials filed, the court finds that there
are at least four deficiencies apparent from the face of this
federal habeas petition.  First, Mr. Kelly does not state his claims
with sufficient clarity and allege adequate facts in support.
Second, he does not show that he properly and fully exhausted all

_____

     [1]   Kansas Department of Corrections inmate records show the spelling of
petitioner's last name as Kelley rather than Kelly.

available state court remedies on every claim that he is attempting to raise in his federal petition.  Third, it appears that he has procedurally defaulted his claims that were recently exhausted. Fourth, it appears that this federal habeas petition is barred by the one-year statute of limitations, given that it is filed over 20 years after the challenged state conviction was imposed.


**FAILURE TO CLEARLY ALLEGE CLAIMS AND FACTS**

Mr. Kelly does not properly utilize the federal habeas corpus forms.  If he had, his claims and the facts upon which each is based might be easier to recognize.  Instead, he removed the pages from the form petition on which he was directed to state each claim separately in its own numbered section, followed by the supporting facts for that claim, followed by the details of his exhaustion of state remedies on that particular claim.  In the place of these pages with organized sections for each claim, he inserts handwritten pages with run-on arguments and jumbled claims and facts.

To cure this and other deficiencies, Mr. Kelly is required to submit an Amended Petition that must be on the court-provided forms and he must fully utilize and respond to each question on the forms to state his claims.  Each claim must be separately numbered and discussed.  If he has more claims than there are numbered sections for claims on the forms, then he may attach one additional page for each additional claim.  On any additional page he must number and write his claim and answer all the questions regarding that claim in the same order as required on the forms.

Mr. Kelly's quoting from several state statutes, state cases, and the Kansas Constitution is of little assistance in presenting

2

his claims.  In addition, his attempts to simply incorporate other portions of his numerous filings into his petition are improper.

Once the Amended Petition is filed, it will completely supercede the original petition.  However, the court has already considered the numerous attachments to the original petition, and its findings herein are based upon some of those documents, which will continue to be before the court.

As best as the court can tell, Mr. Kelly appears to be attempting to raise the following claims: (1) defective information lacked essential elements of crime charged and impaired his ability to prepare his defense; (2) he was not provided a copy of the information; (3) ineffective assistance of counsel during plea proceedings; (4) his plea was unknowing and involuntary because he was not informed that he was pleading guilty to all the elements of the offense; (5) the judge never inquired into the factual basis for his plea; (6) investigators did not thoroughly investigate the evidence; (7) racial bias due to his being a black defendant and the victim having been white; (8) deliberately falsified information was presented to the District Attorney; (9) state court decisions on his post-conviction motions have been erroneous and (10) delay by counsel in pursuing his appeal or motion to correct sentence.[2]

He should consider this list of claims; and in his Amended Petition, he may add, delete, or change any claim that has been misinterpreted by the court.  He should not include any of the above claims or any other claim that has not been fully and properly exhausted in state court.  Otherwise, his Amended Petition may be

---

[2]     None of petitioner's attachments from state court proceedings suggest that he raised claims (6) through (10) in any state post-conviction motion.

dismissed as a "mixed petition," which is one containing both exhausted and unexhausted claims.

**FAILURE TO SHOW EXHAUSTION ON EACH AND EVERY CLAIM**

The court further finds that petitioner's statements regarding exhaustion are not supported by sufficient facts. Again, it appears that had Mr. Kelly properly used the forms, he would have had a better chance of showing exhaustion on each of his claims. In his handwritten pages, he does not adequately describe his efforts to exhaust in state court and set forth facts that connect particular efforts to a particular claim raised. Instead, he repetitively alleges in a conclusory fashion that he has exhausted. In his Amended Petition Mr. Kelly must set forth, immediately after presenting a single claim and the facts supporting that claim, the following information: (1) the type of state action he filed in which that particular claim was raised and the state court in which it was filed, (2) the date of its filing, (3) the issues raised in that filing and (4) the result including the date of the state court's decision. The instant petition, if it raises the foregoing ten claims summarized by the court, undoubtedly does not describe the course of full and proper exhaustion that Mr. Kelly pursued on each of those claims.

The burden is on the federal habeas petitioner to show exhaustion of state court remedies. Exhaustion of state court remedies must be full. This means that the petitioner must have presented his claim first at the state district court level and then appealed any unsatisfactory decision first to the Kansas Court of Appeals (KCA) and finally to the Kansas Supreme Court (KSC).

4

Exhaustion of state court remedies must also be proper.  This means that the petitioner must have followed the appropriate state procedures to present his claims at each level in the state courts. Mr. Kelly's use of the wrong procedures including applying directly to the KSC was not proper exhaustion.  In order to show that each claim raised in his federal petition has been fully and properly exhausted, Mr. Kelly must adequately describe the procedural history of the remedies he sought in state court in connection with each claim.

Constructing the procedural history of Mr. Kelly's efforts to challenge his 1991 conviction in state court is made particularly difficult by the following circumstances.  Mr. Kelly has filed prior frivolous actions and has been designated a three-strikes litigant as a result.  He has filed prior actions in this court that he improperly styled as habeas petitions when they mainly challenged conditions of his confinement, like his placement in administrative segregation.   His pleadings have often been voluminous, disorganized, and confused.  The court has no doubt, particularly after reviewing his attachments, that his pleadings in state court have been confused as well.

Nevertheless, having reviewed all the materials filed by petitioner herein together with the available relevant opinions of the state courts, the court concludes that petitioner has failed to show that he fully and properly exhausted state court remedies on the ten issues set forth above for the following reasons.

Mr. Kelly alleges that he did not directly appeal the criminal conviction challenged herein because he had no right to appeal under Kansas law.  It is thus plain that he did not exhaust any claim in

a direct appeal.  It is equally plain that in order to have exhausted any claim, he must have fully and properly presented that claim in some sort of post-conviction motion in state court. However, as noted, crucial information regarding his post-conviction efforts in state court cannot be discerned from his current, jumbled filings and allegations.

For example, Mr. Kelly claims that, other than a direct appeal, he has filed the following in state court concerning the conviction under attack: "78 CR 1416 & others 670 & 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."  The first number is that of a 1978 criminal case and cannot be an action filed by Mr. Kelly in connection with his 1991 conviction.  The numbers 670 and 671 surely refer to the criminal cases in which he was sentenced in 1991, rather than some state post-conviction remedy. The only number he provides that actually refers to a state post-conviction action is 60-1507.  Petitioner states the date of filing as in 1993 and the "result" as "still pending after 15 years." These vague statements are the only factual allegations Mr. Kelly makes regarding exhaustion.  Not only are these statements too vague to establish exhaustion on all ten of petitioner's claims, they are refuted by the procedural history of Mr. Kelly's case that is set forth in State v. Kelly, 291 Kan. 868, 248 P.3d 1282 (Kan. Mar. 25, 2011), which is discussed in detail in the next section.

**PETITION BARRED BY STATUTE OF LIMITATIONS**

The foregoing deficiencies may be of little significance in light of the third apparent deficiency.  It plainly appears that this petition is time-barred.  If it is untimely, then it must be dismissed with prejudice, whether or not the claims are clearly

stated and whether or not exhaustion is clearly shown.

The statute of limitations applicable to a federal habeas corpus petition is set forth in 28 U.S.C. § 2244(d)(1), which provides:

> A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

The "limitation period shall run from" the "latest of" four dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The statute also provides for tolling of the statute of limitations during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." 28 U.S.C. § 2244(d)(2).

The date Mr. Kelly's 1991 conviction became "final" for statute of limitations purposes is affected by the fact that § 2244 did not become effective until April 24, 1996. It is well-settled that, for a state prisoner whose conviction actually became final before the statute's effective date, the statute of limitations does not begin to run until April 24, 1996.[3] Hoggro v. Boone, 150 F.3d 1223, 1225 (10th Cir. 1998). It follows that the one-year statute of limitations period in which Mr. Kelly was required to file his federal habeas corpus petition challenging his 1991 conviction or sentence began to run on April 24, 1996, and unless its running was tolled in some manner, expired a year later on April 24, 1997. The initial question thus presented is whether or not petitioner has

---

[3]   It follows that any motions filed and decided prior to this date, have no affect on the limitations period.

shown that he is entitled to either statutory or equitable tolling during this one-year period beginning on April 24, 1996.  The court finds that he has not.

In his federal petition, Kelly responds to the question on timeliness by generally referring to his motion to correct illegal sentence.  He alleges that he was not provided with a copy of the information as required under state law.  He also alleges that in October 1994 he was "referred to see Legal Services for Prisoners," which advised there was nothing they could do for him,[4] and that he wrote a letter to a public defender in June 2009.  He specifically refers only to the following dates and actions: a motion to correct illegal sentence filed during or after 2006; case number 90-63092 and a denial by the KSC in 1990.  None of these dates falls within the crucial one-year period.  Mr. Kelly does not clearly describe a particular tolling-type motion that he filed or had pending in state court during this one-year time period.[5]  His statements that "[i]t was until 1994 the Kansas Supreme Court allowed motion to withdraw

_____

[4]    Petitioner exhibits a letter to him from Deputy District Defender Bandy dated October 13, 1994, which in pertinent part advised him as follows:

> Please be advised that Mr. Wurtz no longer is employed at this office and in reviewing some of his old files I discovered . . . the judge denied your motion.  No letter was sent to our office so I assume that no notice was sent to you.  I have prepared a journal entry to reflect his decision.

Mr. Bandy added that since Kelly appeared to have some complaints about an attorney in that office, the office could not represent him in a 60-1507.  Bandy recommended that Mr. Kelly contact Legal Services for Prisoners "to aid" him in preparing his action.  This letter indicates that a motion filed by Mr. Kelly was denied prior to October 1994.  It does not suggest that any action was pending at or after that time.

Petition (Doc. 1) Attach. 117/101.

[5]    Moreover, even if Mr. Kelly can show an entitlement to tolling for the year immediately following the passage of the statute of limitations, he will also need to show tolling for every consecutive up to 2007.  This is because his own exhibits indicate that his motions in state court challenging this conviction were filed in 2007 or 2008.

plea" and "Petition had alleged a new sentencing law & 60-1507 had been pending for over 15 years to court" make little sense.

Mr. Kelly also includes bald statements in his response on timeliness that "under due diligence (he) pursued his claim" and "his failure to timely file was caused by extraordinary circumstances beyond his control." However, such conclusory allegations are not sufficient to show that he is entitled to any sort of tolling between April 24, 1996, and April 24, 1997. A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 531 U.S. 1194 (2001)(Equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control."). In the habeas corpus context, equitable tolling has been limited to "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 800 (10th Cir. 2000). The Tenth Circuit has stated that equitable tolling "would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct--or other uncontrollable circumstance--prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." Id. (internal citations omitted); Burger v. Scott, 317 F.3d 1133, 1141 (10th Cir. 2003). "Simple excusable neglect is not sufficient." Gibson, 232 F.3d at 808. Petitioner has not alleged any facts establishing his entitlement to equitable tolling during the

relevant time frame.

Since Mr. Kelly's statements in his petition regarding exhaustion and timeliness are inadequate, the court thoroughly reviewed his exhibits and the available state court opinions in an attempt to piece together the procedural history of the criminal conviction under attack. Most of the documents attached to the petition relate to motions filed by Mr. Kelly in 2007 or later. These motions, which were obviously filed long after April 24, 1997, can have no tolling effect for the reason that the statute of limitations already expired prior to their filing. No record is presented and no clear allegations are made regarding a tolling-type motion that was filed or still pending after April 24, 1996, and before 2007.

Petitioner exhibits the "State's Memorandum Opposing Defendant's Motion" to correct illegal sentence. Petition (Doc. 1) Attach. 134/110. Therein, the State included in its account of the procedural background of this state court action that "[o]n August 29, 2007, the defendant filed a pro se motion pursuant to K.S.A. 22-2504(2) in case 90-CR-671. . ." and other motions thereafter. The State argued that the motions and claims appeared to be habeas in nature, meaning they should be treated as brought under K.S.A. 60-1507, and found to be barred by the one-year limitations period applicable to 1507 motions. Mr. Kelly responded, not by showing that the motions had been timely, but by arguing that a motion to correct illegal sentence and his jurisdictional claim of a fundamental defect in the information could be brought at any time. Petitioner also exhibits the "Memorandum Decision and Order" of the District Court of Shawnee County. Id. Attach. 145/125. This order

also indicates that the motions under consideration were filed years after April 24, 1997.  The state district judge found: "On August 29, 2007, the Defendant filed a pro se motion pursuant to K.S.A. 22-2504(2) in case 90-CR-671 . . . ."  The judge also found that in this motion or motions, Mr. Kelly asked the court "to enter a nunc pro tunc order to reflect that he did not knowingly and voluntarily waive his right to a preliminary hearing; the plea agreement lacked a factual basis and was not entered knowingly, intelligently, or voluntarily; and his counsel was ineffective in the way he advised the Defendant regarding the plea agreement" as well as "to correct his illegal sentence."  Id. Attach. 145/125 - 146/126.  The state judge further found that these claims were not within the scope of a motion to correct illegal sentence and that a nunc pro tunc order was not the appropriate means to address these allegations.  Id. Attach. 146/126 -147/127.  The judge also found that "the Defendant did not raise his claim until 2007."  Id. at 147/127.  The court then liberally analyzed Mr. Kelly's claims under K.S.A. 60-1507 and held, based on the effective date of the state statute of limitations for 1507 motions, that they were time-barred because they had not been filed prior to June 30, 2004.  Id.

In State v. Kelly, 291 Kan. at 869-87, the Kansas Supreme Court (KSC) decided the appeal "of a number of postconviction motions" in which Kelly "sought to withdraw pleas he had entered some two decades ago, on February 14, 1991."  The appellate court opinion confirms that Mr. Kelly's motions were filed in 2007 or later.  The KSC set forth the following procedural history of Mr. Kelly's efforts in state court:

In 1990, the State filed two cases against Kelly, numbered

90CR670 and 90CR671.  In 90CR670, Kelly was charged with aggravated kidnapping, rape, two counts of aggravated criminal sodomy, and aggravated sexual battery from an incident on December 11, 1989, involving W.W., a woman with whom Kelly had a child.  In 90CR671, Kelly was charged with two counts of aggravated criminal sodomy for allegedly forcing B.S., a 15-year-old male, to engage in oral and anal sexual acts in November 1989.

The procedural history in both cases was influenced by the fact that at the conclusion of the December incident, an acquaintance of W.W. severely beat Kelly with a shovel, sending him to the hospital with a brain injury. Subsequent to the filing of charges, the court found that as a consequence of his brain injuries, Kelly was mentally incompetent to stand trial in both cases. The court committed Kelly to Larned State Security Hospital and further ordered that Kelly undergo emergency brain surgery, to which he had refused to consent.

Larned State Hospital (Larned) discharged Kelly on December 6, 1990.  The court conducted a preliminary hearing in 90CR670 on January 14, 1991, but the preliminary hearing in the other case was delayed after the State learned that B.S. was out of state.  Before the other preliminary hearing could be conducted, the parties reached a plea agreement which called for Kelly to plead guilty to attempted rape in 90CR670 and to one count of aggravated criminal sodomy in 90CR671. In addition to dismissing the remaining counts of both complaints, the State agreed not to invoke the Habitual Criminal Act and to recommend that Kelly be treated at Larned in lieu of imprisonment.

After accepting Kelly's plea, the court followed the plea agreement and committed Kelly for treatment in lieu of imprisonment, pursuant to K.S.A. 22-3430 (Ensley 1988). However, Kelly was subsequently released from Larned and returned for sentencing in June 1991.

At Kelly's sentencing hearing on June 21, 1991, his counsel indicated to the judge that Kelly wanted to withdraw his plea to the aggravated sodomy charge based upon his belief that plea counsel had coerced him into entering the pleas.  Without hearing further argument, the sentencing judge summarily denied the request.  Id. at 870.  Kelly was then sentenced to a controlling term of 15 years to life.  Id.  The KSC further explained that:

Kelly's motion to modify his sentences was denied on

> September 11, 1991.  Kelly did not directly appeal his
> convictions, his sentences, or the denial of his
> presentence motion to withdraw pleas.

Id. at 870.  The court does also stated that "[b]eginning in 1993,
Kelly filed a number of postconviction motions, including a K.S.A.
60-1507 motion alleging ineffective assistance of counsel, which was
denied.  Id.

With respect to Kelly's claim that he should be entitled to
withdraw his plea because it was not knowing and intelligent, the
court noted that Kelly had filed various motions, but "appears to
treat the matter as if there had been but one motion under K.S.A.
22-3210(d)."  Id.  The court found instead that Kelly had "received
a ruling on the merits of his motion to withdraw pleas at the
sentencing hearing in 1991, and that Kelly did not appeal that
ruling.  Id. at 874.

The KSC further found that there were "at least three
procedural obstacles" to Kelly obtaining review of his claims.
First, he did not directly appeal and a 60-1507 motion cannot be
used as a substitute for a direct appeal.  Second, the KSC found
that Mr. Kelly had filed a "prior 60-1507" raising the issue of
ineffective assistance of counsel, which rendered the one under
consideration second or successive, and the court found it to be an
abuse of remedy.  Id. at 872.  The "final obstacle to review" was
the requirement in K.S.A. 60-1507(f)(1) that a 60-1507 action must
be filed within 1 hear of the termination of appellate jurisdiction
in the case.  The KSC found that Mr. Kelly "did not meet that
deadline."  Id. at 873.  They concluded that his claims were
procedurally barred.  Id. at 874.

**CLAIMS THAT ARE PROCEDURALLY DEFAULTED**

From the foregoing procedural history, it is clear that the state courts dismissed the 60-1507 claims raised by Mr. Kelly in his motions filed in 2007 and 2008 as procedurally barred because they had not been presented within the applicable time limit in K.S.A. § 60-1507. The KSC also denied Mr. Kelly's claim of ineffective assistance of plea counsel as procedurally barred, finding he had previously filed a claim of ineffective counsel that had been denied. Thus, this claim was denied as second and successive under state law.

Under the procedural bar doctrine, a federal habeas court "cannot address claims that were defaulted in state court on independent and adequate state procedural grounds "unless [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Hume v. McKune, 176 F.Supp.2d 1134, 1140 (D.Kan. 2001). "A state procedural ground is independent if it relies on state law, rather than federal law . . . ." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998). The state procedural bars applied in petitioner's case in state court have previously been held to constitute adequate and independent grounds. It follows that petitioner's claims considered by the KSC are procedurally barred for federal habeas corpus purposes unless petitioner establishes both cause and prejudice for

his defaults or the miscarriage of justice exception.[6]  Petitioner's allegations and exhibits do not show cause and prejudice for his defaults in state court.  Nor do they suggest there will be any miscarriage of justice.

## PETITIONER IS ORDERED TO FILE AMENDED PETITION

Mr. Kelly is given time to file an Amended Petition.[7]  In his Amended Petition, he must clearly allege separate, numbered claims and state the facts in support immediately after each claim; he must clearly show full and proper exhaustion on each claim; he must show why his claims that have been procedurally defaulted in state court should not be treated as procedurally defaulted in federal court; and he must allege facts showing that he is entitled to additional statutory or equitable tolling.  Petitioner must include any facts showing additional entitlement to tolling in the timeliness section of his form petition and may include an additional page that is clearly marked as being a continuation of his answer to Question 18.  If petitioner raises any claim in his Amended Petition that was dismissed as procedurally barred in state court, he must allege facts showing cause and prejudice or a miscarriage of justice in the exhaustion section for each such claim.  If Mr. Kelly fails within

---

[6]     The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  Schlup v. Delo, 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  Schlup, 513 U.S. at 324.

[7]     As noted, this Amended Petition must be submitted upon fully-completed, court-provided forms.  Petitioner must write the number of this case on the top page of his Amended Petition.

the allotted time to file an Amended Petition that complies with the specific directions in the foregoing Memorandum and Order or fails to cure all the deficiencies pointed out herein, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that petitioner is granted thirty (30) days to file an Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 upon court-provided forms that complies with the foregoing Memorandum and Order.

**IT IS FURTHER ORDERED** that petitioner must show in his Amended Petition why this action should not be dismissed for all the reasons set forth herein, including that all his claims have not been exhausted in state court, the claims he has raised in state court are procedurally defaulted, and this action is time-barred under 28 U.S.C. § 2244(d)(1).

**IT IS FURTHER ORDERED** that petitioner's Motion to Proceed in forma pauperis (Doc. 2) is denied as moot.

The clerk is directed to send § 2254 forms to Mr. Kelly.

**IT IS SO ORDERED.**

Dated this 1st day of February, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

16